FILED
SUPERIOR COURT
OF GUAM

2021 DEC 10 PM 4:48

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0580-20** |
| vs. | **DECISION AND ORDER** |
| **JEROME CAMACHO CRUZ aka Anthony Cruz,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on August 6 and 11, 2021, for hearing on Defendant **JEROME CAMACHO CRUZ aka Anthony Cruz's** ("Defendant") Motion to Suppress Evidence. Present were Defendant with counsel, Assistant Alternate Public Defender Heather M. Zona and Assistant Attorney General Sean E. Brown on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On November 19, 2020, Defendant was indicted with the following charges: (1) Possession of a Schedule II Controlled Substance with Intent to Deliver (As a First Degree Felony); (2) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (3) Possession of a Firearm without a Firearm Identification (As a Third Degree Felony); (4) Family Violence (As a Third Degree Felony); and (5) Reckless Driving (As a Misdemeanor). (Indictment, Nov. 19, 2020). These charges stem from alleged events occurring on or about November 9, 2020. *Id.*

On June 11, 2021, Defendant filed the instant Motion to Suppress. On June 17, 2021, the Government filed its Opposition. On August 6, 2021, the Court heard sworn testimony from Guam Police Department ("GPD") Officers Alan Pangelinan and Leanson Skilling ("Officer Pangelinan" and "Officer Skilling," respectively); and Ms. Sheela Lemaire ("Ms. Lemaire"). On August 11, 2021, the Court heard sworn testimony from GPD Officer Alan M. Perez ("Officer Perez"). The Court then gave the parties leave to file proposed findings of fact and conclusions of law. On August 18, 2021, the Government filed its Proposed Findings of Fact and Conclusions of Law and on September 3, 2021, Defendant filed his Proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

At the August 6 and 11 hearings, the Court ascertained the following facts from witness testimony:

1. On November 9, 2020, police responded to a reckless driving complaint, which was reported by Ms. Lemaire.

2. Ms. Lemaire testified that she saw two vehicles, a sedan and a truck, driving recklessly beginning in front of First Hawaiian Bank in Maite. Ms. Lemaire testified that it appeared that one car was trying to evade the other. Ms. Lemaire called 911, told them her location and that she was heading southbound in front of First Hawaiian Bank when two vehicles in oncoming traffic u-turned right in front of her so she had to step on her breaks to avoid a collision. The smaller car was speeding away from the other car, which kept tailing it, and the cars were weaving in and out of traffic crossing lanes.

3. Ms. Lemaire stayed behind the vehicles while on the phone with the police, letting them know where the vehicles were at and what she was witnessing. Ms. Lemaire testified that as they approached Veteran's Cemetery, the vehicle that was chasing the sedan kept trying to push it off the shoulder. Eventually there was an impact and a lot of smoke came out of the sedan. The other vehicle kept in pursuit and stayed on the sedan's tail, while rubber from the tire was flying off the car. As the cars approached Polaris Point, Ms. Lemaire observed something discarded from the

passenger side window near the traffic light. Ms. Lemaire thought the item thrown out was something white-like a plastic bag or a tall McDonald's or Wendy's plastic cup. Ms. Lemaire was a distance away, so she could not be certain. Ms. Lemaire testified that she thought the plastic bag may have landed three feet behind the telephone pole.

4. Ms. Lemaire testified that both cars were in the same lane, that the first car couldn't go much further because the rubber of the tires was flying out on the road, and that the second vehicle kept pursuing until the vehicle had to stop.

5. Officer Pangelinan and Officer Joe Nucum were first on scene, responding to the reckless driving complaint from Central Precinct.

6. Officer Pangelinan and Officer Nucum encountered two vehicles stopped on the roadway. One vehicle was a sedan, the other vehicle was a Toyota Tacoma. Officer Pangelinan testified that there was damage to the vehicles, and that a crash may have occurred. Officer Pangelinan testified that the damage he observed corroborated with information he received from the desk watch officers.

7. Officer Nucum approached the sedan and Officer Pangelinan approached the Toyota Tacoma. Officer Pangelinan testified that one occupant in the Tacoma was identified as Donson Acfalle and the operator as Jerome Cruz. Officer Pangelinan instructed both occupants to exit the vehicle. Mr. Acfalle was told to get out of the vehicle first, and was recognized by Officer Pangelinan from prior police encounters. After Officer Pangelinan determined that Mr. Acfalle did not have any weapons on him, Defendant was also told to exit the vehicle. Officer Pangelinan then conducted a pat down on Defendant.

8. Defendant was told to stand towards the front of the truck and place his hands on the hood. Mr. Acfalle was on the rear side of the truck.

9. Officer Pangelinan asked Defendant and Mr. Acfalle if they had anything illegal in the vehicle, to which both answered no.

10. Officer Pangelinan asked both Defendant and Mr. Acfalle for consent to search the vehicle. Officer Pangelinan testified that both nodded their heads, and Defendant said yes. Defendant also said that the vehicle belonged to a friend of his named Don.

11. Officer Pangelinan went through the passenger side of the compartment and found a black shoulder bag on the center console. Officer Pangelinan testified that he was searching for weapons for officer safety and that he did not find any weapons. Officer Pangelinan testified that there was a large sum of U.S. currency in the black shoulder bag. A second search was conducted later on by a different officer.

12. Additional GPD officers arrived on the scene. Officer Pangelinan testified that there were at least three police vehicles at the scene, including his vehicle.

13. Officer Perez who arrived later on the scene observed at least four other officers present and heavy damages sustained to the sedan and pickup truck. Officer Perez testified that at least one occupant of the sedan were outside the vehicle when he arrived speaking to an officer, and one male was towards the front of the truck and a second male individual towards the back side of the truck. Officer Perez observed an officer near each of the males. Officer Perez testified that none of the individuals were handcuffed.

14. Defendant provided Officer Pangelinan a paper photocopy of his Guam driver's license.

15. Officer Pangelinan asked the desk watch officers from both Central and Southern Precinct as to information from the reporting person as to what transpired.

16. Officer Pangelinan testified that he was informed that the Tacoma had struck the sedan, and that the reckless driving began in the village of Maite, and concluded where they located the vehicles in Piti. Officer Pangelinan arrested Defendant for reckless driving.

17. Officer Pangelinan testified that Defendant was not in handcuffs prior to being arrested for reckless driving. Officer Pangelinan also testified that Defendant was

not allowed to leave and that he was being detained. Officer Pangelinan testified that both Defendant and Mr. Acfalle could have still accessed the vehicle.

18. Officer Pangelinan estimated the amount of time from when Defendant was told to exit the vehicle to when Defendant was arrested was under fifteen (15) minutes.

19. After Officer Pangelinan arrested Defendant, any items on Defendant's person were relinquished to Defendant's girlfriend. Officer Pangelinan testified that officers later learned that she was the operator of the other vehicle.

20. Officer Pangelinan could not recall whether or not he advised Defendant of his *Miranda* rights immediately after arresting him, but indicated that Defendant was not questioned.

21. Officer Pangelinan testified he advised Defendant of his *Miranda* rights through a GPD custodial interrogation form back at the police station. Defendant acknowledged his rights and provided a verbal statement. Officer Pangelinan testified that Defendant denied ownership on everything located except for the currency.

22. Officer Skilling testified that he confiscated evidence from a bag inside the vehicle and another bag later discovered in the jungle area near Polaris Point, Piti.

23. Officer Skilling testified that the reporting person observed a white object either bag or plastic cup being thrown out of the front passenger window of the Tacoma into the jungle area of Polaris Point. Officer Skilling testified that police believed the vehicle that the item was thrown out of was the same vehicle involved in the reckless driving incident. Officer Skilling testified that three to four officers were searching the jungle area near Polaris Point, Piti. Officer Skilling testified that Officer Santos found a white plastic bag on the grass. Officer Skilling testified that it was a small white plastic bag with the Foodies logo tied up in a double knot. Officer Skilling testified that they waited for CSI Officer Alcantara to come and photograph the bag before touching it.

24. Officer Skilling testified that the bag was found around 10-15 feet from the road, and the grass was about 5 feet tall. Officer Skilling testified that he believed the bag could have been thrown from the roadway.

25. Officer Skilling testified that the bag appeared to contain a handgun because he saw the shape of a muzzle. Officer Skilling testified that he discovered a loaded handgun, a blue transparent cylinder container with various pills and a clear plastic bag with presumptive positive methamphetamine within the bag.

26. Officer Perez testified that he also searched the pickup truck. Officer Perez did not hear Defendant or the passenger give Officer Pangelinan consent to search the vehicle.

27. Officer Perez testified that his search of the truck took a few minutes. Officer Perez testified that when Defendant was arrested, the truck was searched as a search incident to arrest.

28. Officer Perez testified that he was not aware of any weapons or drugs being involved in this matter prior to his search of the truck.

29. Officer Perez testified that he discovered a fabricated glass pipe in the truck during his search.

## DISCUSSION

Defendant moves the Court to suppress any evidence seized from the truck and any statements made by Defendant. *See generally*, Mot. Suppress, Jun. 11, 2021.

### A. Evidence Seized from Truck

Defendant first moves the Court to suppress any evidence seized from the truck because it was discovered as a result of an unlawful search. The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry*

*v. Ohio*, 392 U.S. 1 (1968)). Title 8 G.C.A. § 30.10 also "utilizes the same standard for reasonable suspicion that is articulated in *Terry v. Ohio* and its progeny for courts to apply when analyzing the legality of investigative detentions." *People v. Taman*, 2013 Guam 22 ¶ 21. Section 30.10 provides:

> Whenever a police officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person.

8 G.C.A. § 30.10. "The reasonable suspicion necessary to justify an investigatory stop is dependent upon both the content of information possessed by police and its degree of reliability." *Johnson*, 1997 Guam 9 ¶ 5 (citation and internal quotation marks omitted). Reasonable suspicion exists:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety....

*Taman*, 2013 Guam ¶ 21 (quoting *Terry*, 392 U.S. at 30-31).

In this case, Defendant was detained after Officer Pangelinan responded to a reckless driving complaint. Officer Pangelinan testified that there were two vehicles on the side of the roadway, that there was visible damage to the vehicles, and that he believed a crash may have occurred. Officer Pangelinan testified that the damage he observed corroborated with information he received from the desk watch officers regarding the reckless driving. Defendant was identified as the driver of the vehicle. Officer Pangelinan also testified that he recognized the passenger of the vehicle, Mr. Acfalle, from prior police encounters. Both Defendant and Mr. Acfalle were instructed to exit the vehicle, were patted down, and stood by different parts of the vehicle with their hands visible on the vehicle itself. Officer Pangelinan testified that he was the only officer at that time addressing the two occupants of the truck because Officer Nucum who had arrived with him on the scene was addressing the occupants of the sedan.

The Court finds that based on the information relayed to Officer Pangelinan by the desk watch officer regarding the reckless driving complaint, which began in Maite and ended in Piti

and involved two vehicles, the officer had reasonable suspicion that either the safety of him or that of others was in danger. *See Terry*, 392 U.S. at 27. Officer Pangelinan testified that he patted down the occupants of the vehicle to ensure that they did not have any weapons, and that he also did an initial search of the vehicle to ensure there were no weapons because the occupants were not handcuffed and near the vehicle.

The Court also finds that the initial search of the vehicle was valid because Defendant and the passenger of the vehicle consented to the search. "A search or seizure made without a warrant is presumed to be unreasonable. In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to the warrant requirement." *Id.* (internal citations omitted). "The People bear the burden of proving, by a preponderance of the evidence, that consent was given voluntarily." *Id.* at ¶ 25.

> Voluntariness is determined from the totality of the circumstances. . . . Factors in determining voluntariness include: 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimidated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the person was in custody or under arrest when the consent was given; 5) whether the person was in a public or a secluded place; and 6) whether the defendant objected to the search.

*People v. Cundiff*, 2006 Guam 12 ¶ 49 (citing *Chargualaf*, 2001 Guam 1 ¶ 25). "While helpful, the above factors are not exhaustive. One factor alone is not dispositive of a particular situation." *People v. Santos*, 1999 Guam 1 ¶ 37 (citing *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988)). *See also United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) ("No one factor is determinative in the equation. . . . [T]hese factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry.").

Here, Officer Pangelinan testified that Defendant was detained after he stepped out of the vehicle. Officer Pangelinan testified that Defendant was not free to leave. Officer Pangelinan testified that he did not question Defendant about the reckless driving but did ask both Defendant and the passenger of the truck, Mr. Acfalle, for consent to search the truck after

they were patted down, to which both nodded their heads, and Defendant verbally stated "yes." Officer Pangelinan testified that he and Officer Nucum were first to arrive on the scene, and that Officer Nucum addressed the occupants of the sedan, while he addressed the occupants of the truck. Officer Pangelinan testified that Defendant and Mr. Acfalle were not handcuffed, and were standing near the vehicle with their hands on the vehicle. There is nothing in the record showing that Officer Pangelinan or Officer Nucum asserted any coercive, threatening, or intimidating behavior prior to asking Defendant's consent. Nor did Officer Pangelinan make any representations regarding the search. Although Defendant stated that the vehicle was owned by his friend, "Don," the passenger of the truck was also named "Donson," and he nodded consent to search the truck. Additionally, Defendant had been driving the vehicle in a manner that resulted in visible physical damage to both the truck and sedan. Therefore, the Court finds that based on the totality of the circumstances, Defendant voluntarily consented to a search of the truck.

As to the second search of the truck, the Court finds that any consent given for the initial search was still valid, as the consent was never withdrawn. Accordingly, the Court will not suppress any evidence seized from the truck. Lastly, the Court will not suppress any items thrown out of the truck contained in the plastic bag, as those items were abandoned.

## B. Statements Made by Defendant

Next, Defendant moves to suppress statements made to the police based on violations of his *Miranda* rights. The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and is applicable to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(d). "The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). "An interrogation is said to occur when the defendant, in custody, is the target of questions or statements, which the police can expect will elicit incriminating responses." *People v. Farata*, 2007 Guam 8 ¶ 36 (citation omitted). "[T]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the

part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* (citation omitted). An incriminating response is any response - whether inculpatory or exculpatory - that the *prosecution* may seek to introduce at trial. *Id.* (citation and quotation marks omitted) (emphasis in original).

In this case, although Officer Pangelinan could not recall whether or not he read Defendant his *Miranda* rights at the scene immediately after Defendant was arrested, he did recall that he advised Defendant of his *Miranda* rights at the police station through the standard GPD custodial interrogation form. There is nothing before the Court indicating that Defendant did not understand his rights or that his waiver of his rights was not valid. Officer Pangelinan testified that he did not ask Defendant any questions immediately after he was arrested for the offense of reckless driving. Officer Pangelinan testified that he started asking Defendant questions after he advised Defendant of his *Miranda* rights. "[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *People v. Farata*, 2007 Guam 8 ¶ 22 (citation omitted). Therefore, the Court does not find that Defendant was subjected to interrogation until after he was arrested and transported to the precinct. Accordingly, the Court does not find that Defendant's rights were violated, and DENIES the Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress Evidence. A **Status Hearing** is set for **January 24, 2022** at **9:30 a.m.** via Zoom.

**IT IS SO ORDERED** this 10th day of December, 2021.

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
_AG, APD_

Date: 12/10/21 Time: 4:52 pm
_CM_
Deputy Clerk, Superior Court of Guam

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Cruz*
Case No. CF0580-20
Decision and Order